IN THE CHANCERY COURT FOR KNOX COUNTY, TENNESSEE
SIXTH JUDICIAL DISTRICT AT KNOXVILLE

| | | |
|---|---|---|
| CITY OF MONROE EMPLOYEES' RETIREMENT SYSTEM, On Behalf of Itself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>CTI MOLECULAR IMAGING, INC., RONALD NUTT, TERRY D. DOUGLASS, WOLF-EKKEHARD BLANZ, ROY DOUMANI, JAMES R. HEATH, LEROY HOOD, HAMILTON JORDAN, WILLIAM W. MCINNES and MICHAEL E. PHELPS,<br><br>Defendants. | ) | Case No. 163762-3<br><br><u>CLASS ACTION</u><br><br>PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS |

Pursuant to Rule 34 of the Tennessee Rules of Civil Procedure, plaintiff hereby demands CTI Molecular Imaging, Inc., Ronald Nutt, Terry D. Douglass, Wolf-Ekkehard Blanz, Roy Doumani, James R. Heath, Leroy Hood, Hamilton Jordan, William W. McInnes and Michael E. Phelps (collectively "Defendants") to produce the documents described below for inspection and copying at the law offices of Branstetter, Kilgore, Stranch & Jennings, 227 Second Avenue, North, 4th Floor, Nashville, TN 37201-1631, 45 days after service, at 10:00 a.m., or at such other location and date upon which the parties may mutually agree.

## I. DEFINITIONS

1. "You" and "your" refer to the person responding to these Requests.

2. "CTI Molecular Imaging" means CTI Molecular Imaging, Inc. and its predecessors, successors, divisions, subsidiaries, officers, directors, employees, agents or anyone acting or purporting to act on its behalf.

3. The term "Individual Defendants" means Ronald Nutt, Terry D. Douglass, Wolf-Ekkehard Blanz, Roy Doumani, James R. Heath, Leroy Hood, Hamilton Jordan, William W. McInnes and Michael E. Phelps.

4. "Siemens" means Siemens A.G. and any of its predecessors, successors, divisions, parents, affiliates, subsidiaries, directors, employees, agents or anyone acting or purporting to act on its behalf.

5. "Person" or "persons" means and refers to natural persons, proprietorships, corporations, partnerships, trusts, joint ventures, groups, associations, organizations and governmental agencies and other agencies.

6. The term "Proposed Acquisition" means the proposed acquisition of CTI Molecular Imaging by Siemens announced on March 18, 2005 pursuant to which CTI Molecular Imaging shareholders would receive approximately $20.50 cash for each CTI Molecular Imaging share they own.

7. The term "Offer" means any proposal or expression of interest concerning any acquisition, merger, consolidation, share exchange, business combination or other similar transaction or series of related transactions involving CTI Molecular Imaging or any subsidiary of CTI Molecular Imaging or any offer to purchase, tender offer, exchange offer or any similar transaction or series of related transactions made by any person involving 5% or more of the outstanding shares of any class of CTI Molecular Imaging securities.

8. The term "business relationship" refers to any relationship, whether formal, informal, contractual or legal, concerning any employment, occupation, profession, ownership or equity interest for monetary gain, personal gain or livelihood. "Business relationship" shall also include, without limitation, any monetary, financial or labor investment.

9. The term "loans" means any financial arrangement created or secured by, with, through or because of either CTI Molecular Imaging or Siemens which allows or allowed any of the Individual Defendants to acquire money or any other consideration from CTI Molecular Imaging, Siemens or a third party.

10. The term "document" or "documents" is intended to be interpreted in the broadest possible sense and includes, but is not limited to, all electronic data and all communications which are stored or retrievable or recorded in any manner and also includes, without limitation, any writing or other record of information or images, including, but not limited to, print, handwriting, photographs, film, recordings, memoranda, books, records, accounts, ledgers, vouchers, invoices,

drafts, bills, charge slips, letters, electronic mail or "e-mail," compact discs, CD-ROM discs, magnetic tape, videotape, magnetic or optical disks, "floppy disks," "PowerPoint" or other presentation software systems, telegrams, mailgrams, correspondence, notes and minutes of meetings, conversations or telephone calls, resolutions, interoffice memoranda, work papers, reports, projects, tabulations, studies, surveys, legal complaints and other pleadings, affidavits, interrogatories, legal briefs, legal motions, judgments, designs, drawings, schematics, maps, manuals, models, notebooks, contracts, agreements, diaries, telephone records, desk calendars, appointment books, circulars, charts, transcripts, news releases, trade releases, advertisements, press books, teletype messages, licenses, financial statements, stenographers' notebooks, punchcards, computer printouts and data, telecopier or facsimile transmissions and printouts, letters of credit, stock certificates and securities. The term "document" also includes preliminary drafts or revisions or copies of any such document if the copy is in any way different from the original, now in your possession, custody or control, or in the possession, custody or control of your advisors, agents, employees, servants, representatives, trustees, counsel or other persons acting or purporting to act on your behalf.

11. The term "electronic data" refers to any original and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind), of mechanical, facsimile, electronic, magnetic, digital or other programs (whether private, commercial, or work-in-progress), programming notes or instructions, activity listings of electronic mail receipts or transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail or "e-mail," personal digital assistant ("PDA") messages, instant messenger messages, operating systems, source code of all types, programming languages, linkers

and compilers, peripheral drives, PDF files, PRF files, batch files, ASCII files, crosswalks, code keys, pull down tables, logs, file layouts and any and all miscellaneous files or file fragments, regardless of the media on which they reside and regardless of whether said electronic data consists of an active file, deleted file or file fragment. "Electronic data" also includes any and all items stored on computer memory or memories, hard disks, floppy disks, zip drives, CD-ROM discs, Bernoulli Boxes and their equivalents, magnetic tapes of all types and kinds, microfiche, punched cards, punched tape, computer chips (including, but not limited to, EPROM, PROM, ROM or RAM of any kind) on or in any other vehicle for digital data storage or transmittal, files, folder tabs, or containers and labels appended to or associated with any physical storage device associated with each original and each copy.

12. The term "Financial Statements" includes, but is not limited to, interim, final, pro forma, actual, projected, complete, or partial, annual, quarterly, monthly, weekly or otherwise, audited or unaudited, budgets, budget plans, balance sheets, schedules of direct costs, schedules of miscellaneous income, schedules of general services, fiscal serviceman administrative services, statements of earnings and earnings per share, income statements, cash flow statements, statement of revenues and statements of expenses, all notes or other commentary concerning any of the foregoing and all underlying workpapers and all drafts used in connection with the preparation of any of the foregoing.

13. The term "telephone records" includes, without limitation, telephone directories, rolodexes, messages, telephone logs, recordings of telephone conversations and telephone bills (local and long distance).

14. "Communication" or "communications" refers to any exchange of information by any means of transmission, sending or receipt of information of any kind by or through any means

including, but not limited to, speech, writings, documents, language (machine, foreign or otherwise) of any kind, computer electronics or electronic data, sound, radio or video signals, telecommunication, telephone, teletype, facsimile, telegram, microfilm, microfiche, photographic film of all types or other media of any kind. The term "communication" also includes, without limitation, all inquiries, discussions, conversations, correspondence, negotiations, agreements, understandings, meetings, notices, requests, responses, demands, complaints, or press, publicity or trade releases.

15. The term "concerning" shall mean constituting, evidencing, reflecting, incorporating, effecting, including, or otherwise pertaining or relating, either directly or indirectly, or being in any way logically or factually connected with the subject matter of the inquiry or Request. Requests for "documents concerning" any subject matter include documents concerning communication regarding that subject matter.

16. "Identify" when used to refer to a natural person, shall mean to set forth that person's: (i) full name and title, if any; (ii) present or last known address; (iii) present or last known business and home telephone number(s); and (iv) present or last known employer.

17. "Identify" when used to refer to a document, shall mean: (i) the date of each document; (ii) the type of each such document (*i.e.* correspondence, memorandum, business record, etc.); (iii) the identity of the author(s) or preparer(s) of each such document; and (iv) the present location of each such document or copies thereof.

18. The terms "all" and "each" shall be construed as all/each.

19. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request all responses that might otherwise be construed to be outside of its scope.

20. "SEC" means the Securities and Exchange Commission.

21. "SEC filings" means all documents filed or prepared for the purpose of filing with the SEC and any other state or federal regulatory agency, including, but not limited to, Forms 8-K, 10-K, 10-Q, Schedules TO-T, 13-D, 14A, 14D-1 and 14D-9 and any drafts thereof or amendments thereto.

## II. INSTRUCTIONS

1. In responding to these document Requests, you shall produce separately all documents available at the time of responding or which can be located or discovered by reasonably diligent efforts, including documents in the possession of your agents and representatives.

2. References to an individual, partnership, limited liability company or corporation include any and all agents, employees, representatives and attorneys and all other persons or entities acting on your behalf or under your control.

3. If you claim any form of privilege or any other objection, whether based on statute, common law or otherwise as a ground for not producing any requested document, please furnish a list identifying each document for which the privilege or other objection is claimed together with the following information: date, sender, recipient, persons to whom copies were furnished together with their job titles, subject matter, basis on which privilege or other objection is claimed and the number of each Request to which such document responds. If you claim privilege or any other objection with regard to only part of a document, produce the part to which there is no objection.

4. If you are aware of any documents or copies thereof that may be responsive to these Requests but are no longer in your possession, custody or control, or have been lost or destroyed,

identify each document in detail, including whether: (i) the document is missing, lost or destroyed; (ii) the document has been transferred or delivered to another person and, if so, at whose request; (iii) who prepared it; (iv) to whom it was prepared for and sent to; (v) when it was prepared or sent; (vi) the content of the document; (vii) the person who destroyed it; and (viii) why it was lost or destroyed.

5. If any individual Request is ambiguous in any way, please send a letter to the undersigned counsel describing the ambiguity and it will be promptly clarified in a reply letter. If any individual Request (or subpart thereof) is deemed to be unduly burdensome, please send a letter to the undersigned counsel specifying the reasons why the Request is unduly burdensome and stating whatever information and knowledge you have of the information or documents called for in the Request, and (generally) an attempt will be made to rephrase the Request (or subpart thereof) in a reply letter to lessen the burdens of compliance. Any such reply letter may be treated by the parties to whom it is addressed as a modification of the particular Request.

6. Unless words or terms have been given a specific definition herein, each word or term used herein shall be given its usual and customary dictionary definition except where such words have a specific custom and usage definition in your trade or industry, in which case they shall be interpreted in accordance with such usual custom and usage definition of which you are aware. In construing the Requests herein: (i) the singular shall include the plural and the plural shall include the singular; and (ii) a masculine, feminine or neuter pronoun shall not exclude the other genders, all to the end that the interpretation applied results in the more expansive production.

7. In making production, produce all documents as kept in the normal course of business and identify the file from which each document was taken.

## III.    TIME PERIOD

Unless stated otherwise, the time period to which these Requests refer is January 1, 2004 through the date of production.  If a document prepared before this period is necessary for a correct or complete understanding of any document covered by a Request, you must produce the earlier or subsequent document as well.  If any document is undated and the date of its preparation cannot be determined, the document shall be produced if otherwise responsive to the production Request.

## IV.    DOCUMENTS REQUESTED

REQUEST NO. 1:

CTI Molecular Imaging's Articles of Incorporation and Bylaws, including, without limitation, all amendments or changes thereto.

REQUEST NO. 2:

All minutes (with exhibits/attachments) of all meetings of the Board of Directors of CTI Molecular Imaging or any committee or subcommittee thereof, where there was discussion of any Offer (including, without limitation, the Proposed Acquisition), or of any efforts which could result in an Offer, including, without limitation, the minutes (with exhibits/attachments) of other meetings referenced therein.

REQUEST NO. 3:

All documents reviewed by the Individual Defendants or reviewed by any officer, executive or financial advisor of CTI Molecular Imaging concerning any Offer (including, without limitation, the Proposed Acquisition) or of any efforts which could result in an Offer.

REQUEST NO. 4:

Each Agreement and Plan of Merger contemplated by Siemens and CTI Molecular Imaging, all related exhibits and schedules, and all drafts thereof.

REQUEST NO. 5:

All documents concerning communications concerning any Offer (including, without limitation, the Proposed Acquisition) or of any efforts which could result in an Offer or any other strategic alternatives, including, without limitation:

(a) all internal communications of CTI Molecular Imaging or between CTI Molecular Imaging and Siemens, including, without limitation, executive summaries, memoranda or electronic mail;

(b) all communications between any of the Individual Defendants, including, without limitation, electronic mail, faxes or letters transmitted outside the office;

(c) all communications between CTI Molecular Imaging and any potential acquirers of CTI Molecular Imaging;

(d) all communications between any of the Individual Defendants and Siemens;

(e) all communications between CTI Molecular Imaging and any financial institution, accounting firm, auditing firm, investment banking firm or advisor; and

(f) all communications sent to, or prepared to be sent to, any person on behalf of CTI Molecular Imaging.

REQUEST NO. 6:

All documents concerning the engagement or retention of any financial institution, accounting firm, auditing firm or investment banking firm to provide services concerning any Offer (including, without limitation, the Proposed Acquisition), or of any efforts which could result in an Offer, other strategic alternatives or services concerning the valuation of CTI Molecular Imaging.

REQUEST NO. 7:

All personal files, expense reports or logs, diaries, notebooks, notes, date books, calendars, appointment books, address books or Telephone Records maintained by or for the Individual Defendants or by or for any CTI Molecular Imaging officer or executive concerning any Offer (including, without limitation, the Proposed Acquisition).

REQUEST NO. 8:

All documents concerning financial due diligence concerning any Offer (including, without limitation, the Proposed Acquisition) or any other strategic alternatives.

REQUEST NO. 9:

All appraisals, analyses, opinions, reviews, Financial Statements or other documents concerning the financial results, value, market value, fair value, or inherent value of the stock or any of the assets or businesses of CTI Molecular Imaging.

REQUEST NO. 10:

All financial projections, budgets and plans of future operations concerning CTI Molecular Imaging.

REQUEST NO. 11:

All documents concerning assumptions underlying any analyses, opinions, or projections concerning CTI Molecular Imaging.

REQUEST NO. 12:

All documents provided by CTI Molecular Imaging and/or the Individual Defendants to any financial institution, accounting firm, auditing firm, investment banking firm or advisor.

REQUEST NO. 13:

All documents provided by any financial institution, accounting firm, auditing firm, investment banking firm or advisor to CTI Molecular Imaging and/or the Individual Defendants.

REQUEST NO. 14:

All documents concerning the business relationship between CTI Molecular Imaging and any of its affiliates or subsidiaries and Siemens and any of their affiliates or subsidiaries (including the Individual Defendants) including, without limitation, any management agreements, consulting agreements, or any other agreements without regard to the Time Period.

REQUEST NO. 15:

All confidentiality agreements entered as a result of discussions concerning any Offer, including, without limitation, the Proposed Acquisition.

REQUEST NO. 16:

All documents concerning any opinion from any investment banking firm concerning the fairness of the Proposed Acquisition.

REQUEST NO. 17:

All documents concerning any actual or proposed consideration, including any potential adjustments to such consideration, to be paid to CTI Molecular Imaging shareholders as a result of the consummation of any Offer (including, without limitation, the Proposed Acquisition).

REQUEST NO. 18:

All documents concerning any business relationship between CTI Molecular Imaging and any Individual Defendant, or between any of the Individual Defendants, including, without limitation, any management agreement, partnership agreement, consulting agreement or any other

agreement. (This Request is made without regard to the "Time Period" limitation set forth in Section III herein.)

REQUEST NO. 19:

All documents identifying any business affiliations between any of the Individual Defendants, or between any of the Individual Defendants and Siemens, or between any of the Individual Defendants and CTI Molecular Imaging, including, without limitation, common board memberships or common membership in any business organization.

REQUEST NO. 20:

All documents sufficient to identify the individual directors, officers and managerial-level employees of CTI Molecular Imaging, their duties and responsibilities, their respective dates of service and any vested or unvested options to purchase CTI Molecular Imaging stock, and if any such persons have resigned or been terminated or removed, all documents concerning such resignation, termination or removal and the reasons therefore.

REQUEST NO. 21:

All documents concerning each of the Individual Defendants' purchases, sales, gifts, grants, options, or ownership, either directly, indirectly or beneficially, of CTI Molecular Imaging or Siemens securities of any type or class, including, without limitation, documents summarizing: (1) stock held by the Individual Defendants; and (2) options held by the Individual Defendants, their grant date, vesting date, exercise date, expiration date, price and amount or proceeds to be realized from cancellation or cash-out due to any Offer (including, without limitation, the Proposed Acquisition). (This Request is made without regard to the "Time Period" limitation set forth in Section III herein.)

REQUEST NO. 22:

All documents concerning the Individual Defendants' or any CTI Molecular Imaging officer's compensation, employment, severance, retention bonus, non-competition, change-of-control, or consulting agreements, or other corporate perquisites, including, without limitation, executed and all draft copies of any such agreements. (This Request is made without regard to the "Time Period" limitation set forth in Section III herein.)

REQUEST NO. 23:

All documents concerning the proposed, potential, anticipated, or agreed-upon capital structure of the surviving entity or entities, upon or following consummation of the Proposed Acquisition.

REQUEST NO. 24:

All documents identifying the directors of the surviving entity or entities following consummation of the Proposed Acquisition.

REQUEST NO. 25:

All documents concerning loans made by CTI Molecular Imaging or Siemens to any of CTI Molecular Imaging's officers or to any of the Individual Defendants, or any agreements by which any of the CTI Molecular Imaging's officers or Individual Defendants borrowed money or received any incentives or any gifts from CTI Molecular Imaging or Siemens. (This Request is made without regard to the "Time Period" limitation set forth in Section III herein.)

REQUEST NO. 26:

All indemnification agreements entered into between CTI Molecular Imaging and any of the Individual Defendants which may be invoked in connection with this action. (This request is made without regard to the "Time Period" limitation set forth at Section III herein.)

REQUEST NO. 27:

All documents concerning any presentations made by or on behalf of any investment banking institution, financial institution, financial advisor, appraiser, tax advisor or accountant to any defendant concerning any Offer (including, without limitation, the Proposed Acquisition).

REQUEST NO. 28:

All non-public documents given to potential purchasers of CTI Molecular Imaging regarding the sale of CTI Molecular Imaging (including bankers' presentation books).

REQUEST NO. 29:

All documents concerning any actual or proposed changes in the terms of the Proposed Acquisition or the right or option to terminate, amend or modify the terms of the Proposed Acquisition.

REQUEST NO. 30:

All documents concerning any change in the price of CTI Molecular Imaging shares since the announcement of the Proposed Acquisition.

REQUEST NO. 31:

All documents concerning press releases, published articles, financial analysts' reports and rating agencies' reports, and all drafts thereof, concerning CTI Molecular Imaging.

REQUEST NO. 32:

All documents concerning SEC filings concerning any Offer (including, without limitation, the Proposed Acquisition), any other strategic alternatives, including, without limitation, drafts of past filings and drafts of documents to be filed with the SEC.

REQUEST NO. 33:

All documents concerning any policy, procedure or practice concerning the preservation or destruction of the documents or electronic data or types of documents or electronic data sought herein.

REQUEST NO. 34:

All documents concerning insurance polices or indemnification agreements that may provide coverage to any Individual Defendant or CTI Molecular Imaging, individually or collectively, for any claims or causes of action asserted in this action or that may provide reimbursement for payments made in defense of this action, including, without limitation, loss mitigation insurance or liability-sharing arrangements, including options to purchase such insurance or sharing arrangements, whether acquired before or after the initiation of the litigation.

REQUEST NO. 35:

All documents concerning any stockholder agreements and/or voting agreements between Siemens and any stockholders of CTI Molecular Imaging.

DATED: April 4, 2005

ARNETT, DRAPER, & HAGOOD

[signature]

LEWIS R. HAGOOD
DANIEL D. RHEA
2300 First Tennessee Plaza
P. O. Box 300
Knoxville, TN 37901-0300
Telephone: (856) 546-7000
865/546-0423 (fax)

BRANSTETTER, KILGORE, STRANCH & JENNINGS
JAMES G. STRANCH, III, #2542
J. GERARD STRANCH, IV, 23045
227 Second Avenue, North – 4th Floor
Nashville, TN 37201-1631
Telephone: 615/254-8801
615/255-5419 (fax)

LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
DARREN J. ROBBINS
RANDALL J. BARON
RICK ATWOOD
401 B Street, Suite 1600
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

BARRETT, JOHNSTON & PARSLEY
GEORGE E. BARRETT, #2672
217 Second Avenue, North
Nashville, TN 37201-1601
Telephone: 615/244-2202
615/252-3798 (fax)

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of the foregoing has been sent, via hand delivery to Hunton & Williams, and via facsimile to Alston & Bird, LLP on this 4th day of April, 2005.

John Lucas
HUNTON & WILLIAMS, LLP
2000 Riverview Tower
900 South Gay Street
Knoxville, TN 37902

Scott P. Hilsen
Alston & Bird, LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424

FILED

2005 APR -5 PM 4:15

HOWARD G. HOGAN

IN THE CHANCERY COURT FOR KNOX COUNTY, TENNESSEE
SIXTH JUDICIAL DISTRICT AT KNOXVILLE

| | | |
|---|---|---|
| CITY OF MONROE EMPLOYEES' RETIREMENT SYSTEM, On Behalf of Itself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>CTI MOLECULAR IMAGING, INC., RONALD NUTT, TERRY D. DOUGLASS, WOLF-EKKEHARD BLANZ, ROY DOUMANI, JAMES R. HEATH, LEROY HOOD, HAMILTON JORDAN, WILLIAM W. MCINNES and MICHAEL E. PHELPS,<br><br>Defendants. | ) | Case No. 163762-3<br><br>CLASS ACTION |

## PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY

Plaintiff hereby moves the court for an order expediting discovery as set forth in Plaintiff's Memorandum in Support of its Motion for Expedited Discovery filed contemporaneously. Absent court intervention, the shareholders of CTI Molecular Imaging, Inc. ("CTI" or the "Company"), a Delaware corporation headquartered in Knoxville, Tennessee, will be forced, by midnight on April 28, 2005 -- without the benefit of information that the law specifically requires to be disclosed -- to decide whether to accept a patently inadequate tender offer of $20.25 per share for their CTI

{001599\05213\00021848.DOC / Ver.1}

04/12/2005 12:37 FAX 865 215 2920 KNOX CO CHANCERY COURT

shares ("Proposed Acquisition") by Siemens AG ("Siemens"). April 28, 2005 is long before an answer to the complaint or discovery responses are due, hence absent expedited discovery, Plaintiffs will not be able to present the Court with a complete factual record for the Preliminary Injunction motion that Plaintiffs plan to file before the close of the tender offer.

Given that CTI's shareholders will be irreparably injured if required to decide whether to tender their shares without the benefit of all required material information, fundamental notions of fairness without question weigh decisively in favor of defendants being required to make discovery available a few days or weeks earlier than they otherwise will have to. Accordingly, plaintiff's motion for limited expedited discovery and a hearing and briefing schedule on a motion for preliminary injunction should be granted.

DATED: April 5, 2005

Respectfully Submitted,

ARNETT, DRAPER, & HAGOOD

Daniel D. Rhea by /s/ w/ permission

LEWIS R. HAGOOD
DANIEL D. RHEA
2300 First Tennessee Plaza
P. O. Box 300
Knoxville, TN 37901-0300
Telephone: (865) 546-7000
865/546-0423 (fax)

BRANSTETTER, KILGORE,
STRANCH & JENNINGS
JAMES G. STRANCH, III, #2542
J. GERARD STRANCH, IV, #23045

227 Second Avenue, North – 4th Floor
Nashville, TN 37201-1631
Telephone: 615/254-8801
615/255-5419 (fax)

LERACH COUGHLIN STOIA
GELLER RUDMAN & ROBBINS LLP
DARREN J. ROBBINS
RANDALL J. BARON
RICK ATWOOD
401 B Street, Suite 1600
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

BARRETT, JOHNSTON & PARSLEY
GEORGE E. BARRETT, #2672
217 Second Avenue, North
Nashville, TN 37201-1601
Telephone: 615/244-2202
615/252-3798 (fax)
Attorneys for Plaintiff

04/12/2005 12:37 FAX 865 215 2920 KNOX CO CHANCERY COURT 004/008

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that a true and exact copy of the foregoing has been sent, via hand delivery to Hunton & Williams, and via facsimile to Alston & Bird, LLP on this 5th day of April, 2005.

John Lucas
HUNTON & WILLIAMS, LLP
2000 Riverview Tower
900 South Gay Street
Knoxville, TN 37902

Scott P. Hilsen
Alston & Bird, LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424

{001599\05213\00021848.DOC / Ver.1}

IN THE CHANCERY COURT FOR KNOX COUNTY, TENNESSEE
SIXTH JUDICIAL DISTRICT AT KNOXVILLE

CITY OF MONROE EMPLOYEES' RETIREMENT SYSTEM, On Behalf of Itself and All Others Similarly Situated,

Plaintiff,

vs.

CTI MOLECULAR IMAGING, INC., RONALD NUTT, TERRY D. DOUGLASS, WOLF-EKKEHARD BLANZ, ROY DOUMANI, JAMES R. HEATH, LEROY HOOD, HAMILTON JORDAN, WILLIAM W. MCINNES and MICHAEL E. PHELPS,

Defendants.

Case No. 163762-3

CLASS ACTION

PLAINTIFFS' MEMORANDUM IN SUPPORT OF ITS MOTION FOR EXPEDITED DISCOVERY

## I. INTRODUCTION

Absent court intervention, the shareholders of CTI Molecular Imaging, Inc. ("CTI" or the "Company"), a Delaware corporation headquartered in Knoxville, Tennessee, will be forced, by midnight on April 28, 2005 -- without the benefit of information that Delaware law[1] specifically requires to be disclosed -- to decide whether to accept a patently inadequate tender offer of $20.25 per share for their CTI shares ("Proposed Acquisition") by Siemens AG ("Siemens").

As alleged in the Complaint, rather than complying with their duty to maximize shareholder value, CTI's directors agreed to the Proposed Acquisition to benefit themselves and long-time business partner Siemens. Further to that end, on April 1, 2005, defendants issued a materially defective and misleading Schedule 14D-9 recommendation statement to CTI's shareholders that fails to disclose critical information, including any information whatsoever concerning the financial analyses performed by CTI's financial advisor, Bear, Stearns & Co. Inc. ("Bear Stearns"), in connection with the fairness opinion it presented to the CTI Board. This information must be disclosed under Delaware law. *See In re Pure Res., Inc., S'holders Litig.*, 808 A.2d 421, 449 (Del. Ch. 2002); *Alidina v. Internet.com Corp.*, No. 17235, 2002 Del. Ch. LEXIS 156, at *37 (Del. Ch. Nov. 6, 2002).

Because the process and price of the Proposed Acquisition are unfair, plaintiff City of Monroe Employees' Retirement System intends to seek an order -- prior to the expiration of the tender offer at midnight on April 28, 2005 -- enjoining the Proposed Acquisition. In order to present as complete a record as possible to the Court on that injunction motion, plaintiff needs to complete certain limited expedited discovery, as detailed more fully below. Tennessee's Rules

---

[1] *See Bayberry Assocs. v. Jones*, 783 S.W.2d 553, 558-59 (Tenn. 1990) (applying the law of the state of incorporation to shareholder's fiduciary duty claims since "the relationships among the … directors and stockholders … involve matters peculiar to corporations …."). Unless otherwise indicated, all emphasis is added and all citations are omitted.

of Civil Procedure ("Tenn. R. Civ. P.") specifically permit its courts to shorten the normal time for responding to discovery when fundamental notions of fairness so require. See, e.g., Tenn. R. Civ. P. 30, 33 and 34.02. Given that CTI's shareholders will be irreparably injured if required to decide whether to tender their shares without the benefit of all required material information, fundamental notions of fairness without question weigh decisively in favor of defendants being required to make discovery available a few days or weeks earlier than they otherwise will have to. Accordingly, plaintiff's motion for limited expedited discovery and a hearing and briefing schedule on a motion for preliminary injunction should be granted.

## II. RELEVANT FACTUAL SUMMARY

CTI, a Delaware corporation with its principal executive offices located in Knoxville, Tennessee, is a manufacturer of positron emission tomography ("PET") imaging equipment and related molecular imaging products used in the detection and treatment of cancer, cardiac disease, and neurological disorders. See Complaint ¶8. The Company's product line for PET includes scanners, cyclotrons, micro PET animal scanners, radio pharmaceuticals, detector materials, medical image analysis applications and support services. ¶8

On March 18, 2005, the Company issued a press release entitled "Siemens to Acquire CTI Molecular Imaging." On the same day, defendants filed a form 8-K with the Securities and Exchange Commission ("SEC") announcing the Proposed Acquisition and including a copy of the agreement and plan of merger, certain stockholder support agreements, and amendments to a change in control agreement. On March 22, 2005, plaintiff filed this action, seeking equitable relief against the members of CTI's board of directors (the "CTI Board") and alleging breaches of fiduciary duty in connection with the sale of the Company. Since the filing of plaintiff's Complaint, events have taken place that have made the instant motion necessary.

Specifically, on April 1, 2005, defendants and Siemens filed with the SEC and disseminated to CTI's public shareholders Schedules 14D-9 and 14D-1 (the "Tender Offer Documents") purporting to explain certain aspects of the Proposed Acquisition, including, among other things, defendants' reasons for approving the Proposed Acquisition and recommending that shareholders tender their shares to Siemens. However, the Tender Offer Documents are materially deficient in that they fail to disclose, among other things, any information at all concerning the analyses performed by CTI's financial advisor, Bear Sterns, in connection with the fairness opinion it presented to the CTI Board. The Tender Offer Documents also fail to disclose material information concerning defendants' conflicts of interest in agreeing to the Proposed Acquisition, including their roles with the Company going forward and the substantial benefits to be received by them as a result of the immediate vesting and exercisability of their otherwise unvested and/or unexercisable stock options, restricted stock, stock units and warrants.

Counsel for plaintiff engaged in discussions with defense counsel on April 1, 2005, and again on April 4, 2005, regarding whether defendants would agree to an expedited discovery schedule. Defendants refused to do so, thus necessitating this motion.

## III. LIMITED EXPEDITED DISCOVERY IS NECESSARY AND APPROPRIATE UNDER THESE CIRCUMSTANCES

### A. This Court is Authorized to Grant the Expedited Discovery Plaintiff Seeks

"[T]he course of pretrial discovery is, in large measure, left to the discretion of the trial judge and … the exercise of this discretion is based upon the broad parameters of the rules and fundamental notions of fairness." *Vythoulkas v. Vanderbilt University Hosp.*, 693 S.W.2d 350 (Tenn. App. 1985); *accord Willingham v. Shelby County Election Comm'n*, 2004 Tenn. App. LEXIS 825, at *7-*8 (Tenn.

Ct. App., 2004) (recognizing the long standing rule that "decisions regarding pre-trial discovery matters rest within the sound discretion of the trial court."). Furthermore, Tennessee's discovery statutes have expressly provided for expedited discovery where the slower pace of normal pretrial discovery will prejudice the party seeking relief. For example, Tenn. R. Civ. P. 30, 33 and 34.02, each provide the Court with discretion to shorten the normal time for discovery:

> RULE 30: DEPOSITIONS UPON ORAL EXAMINATION
>
> Rule 30.01: When Depositions May Be Taken.
>
> After commencement of the action, any party may take the testimony of any person, including a party, by deposition upon oral examination. ***Leave of court, granted with or without notice, must be obtained only if the plaintiff seeks to take a deposition prior to the expiration of 30 days after service of the summons and complaint*** . . . .
>
> RULE 33: INTERROGATORIES TO PARTIES
>
> Rule 33.01. Availability; Procedures for Use.
>
> . . . The party upon whom the interrogatories have been served shall serve a copy of the answers, and objections if any, within 30 days after the service of the interrogatories, except that a defendant may serve answers or objections within 45 days after service of the summons and complaint upon that defendant. ***The court may allow a shorter or longer time***. . . .
>
> RULE 34.02: PRODUCTION OF DOCUMENTS [PROCEDURE]
>
> * * *
>
> The party upon whom the request is served shall serve a written response within 30 days after the service of the request, except that a defendant may serve a response with 45 days after service of the summons and complaint upon the defendant. ***The court may allow a shorter or longer time***. . . .

(Emphasis added.)

Numerous Tennessee Appellate decisions also have recognized the right to and need for expedited discovery. In *Sunburst Bank v. Patterson*, 971 S.W.2d 1 (Tenn. App. 1997), residents of Mississippi purchased a home in Shelby County and took out a mortgage on the property with

Sunburst. Because of a failure to file proper forms as to where the tax bills were to be paid, a suit was eventually brought and the property was sold. The Bank and the residents, who had first bought the house, brought suit and moved for and were granted the opportunity to conduct expedited discovery. *Id.* at 2.

In *Willingham*, 2004 Tenn. App. LEXIS 825 at *3-*4, the Court recognized that discovery can easily be served and answered under a compressed time frame. In *Willingham*, the discovery at issue was served and answered in less than 10 business days. *Id* at *3-*4.

Similarly, in *Terminix Int'l Co., L.P. v. Tapley*, 1997 Tenn. App. LEXIS 546 (Tenn. Ct. App., 1997), two employees of the plaintiff, Terminix, who had signed covenants not to compete, resigned their employment and subsequently started their own pet control business. *Id.* at *2. Terminix filed suit to enjoin its former employees. On the same day the case was filed, the court granted expedited discovery to all parties. *Id* at 2. And, depositions were scheduled within 5 days of service of process. *Id* at 3. Thus, it is well established that Tennessee courts can authorize expedited discovery when necessary, as here, to avoid undue prejudice.

Delaware Chancery Courts, which deal regularly with issues involving corporate acquisitions, routinely permit expedited discovery in actions like this one challenging a corporate acquisition.[2] As the court in *American Stores Co. v. Lucky Stores, Inc.*, Del. Ch., C.A. No. 97665, Allen, C., slip op. at 3-4 (Apr. 13, 1988) (attached hereto as Exhibit A) stated:

> [t]he granting of [an expedited discovery motion] is quite conventional in litigation of this type for very good reason[s]. Cases involving contests for corporate control are of necessity very fast-moving. Unlike the classic model of litigation which those who formulated the rules no doubt had in mind, (i.e., a constellation of fixed, historical facts up which a claim is based), takeover cases

2 Although Tennessee procedural rules apply to plaintiff's claims, because CTI was incorporated in Delaware, the substantive law of Delaware applies to plaintiff's claims. *See supra* n.1.

> are fluid, constantly changing affairs, or almost so. In some instances, the underlying subject matter of the suit – control of the corporation – may itself be fully resolved before the time of taking depositions under Rule 30 may have arrived. Even in this context, plaintiff must show some reason justifying departure from the sequence envisioned by the rules, but in this context such a showing will be easier to make.
>
> The presence of a transaction of some sort, a shareholders meeting, the closing of a tender offer or the closing of some structural transaction (a recapitalization, sale of substantial assets, etc.), is typically the reason in such cases to permit expedited discovery. Here I am satisfied that there is legitimate need for expedited discovery and will therefore order that plaintiff may institute any discovery now contemplated by our rules.

*American Stores Co.*, Del. Ch., C.A. No. 97665, Allen, C., slip op. at 3-4; *In re International Jensen Inc. Shareholders Litig.*, Del. Ch., C.A. No. 14992, Jacobs, V.C., slip op. at 2 (July 16, 1996) (attached hereto as Exhibit B) ("[a] party's request to schedule an application for a preliminary injunction, and to expedite the discovery related thereto, is normally routinely granted. Exceptions to that norm are rare."); *see also Harmony Mill L.P. v. Magness*, No. 7463, 1984 Del. Ch. LEXIS 419, at *3-*5 (Del. Ch. Feb. 14, 1984).

Likewise, numerous federal courts permit expedited discovery in similar circumstances. *See, e.g., Ronson Corp. v. Liquifin Aktiengesellschaft*, 483 F.2d 846, 848 (3d Cir. 1973) (district court directed expedited discovery in a case involving allegations that defendants made misrepresentations and omissions in connection with a tender offer); *Mesa Petroleum*, 406 F. Supp. at 917 (in a case concerning a corporate acquisition offer, the court ordered that an expedited discovery program be adopted); *Grimes v. Vitalink Communications Corp.*, 17 F.3d 1553, 1555 (3d Cir. 1994) (expedited discovery used in suit concerning allegations that the defendants breached their fiduciary duties in approving a merger); *Evmar Oil Corp. v. Getty Oil Co.*, No. 76-4039-MMC, 1978 U.S. Dist. LEXIS 18957 (C.D. Cal. Mar. 17, 1978) (in anticipation of the hearing upon plaintiffs' motion for a preliminary injunction restraining a merger, expedited discovery, including the taking of more than 20 depositions, was conducted by

the parties); *Horizon Corp. v. Anselmi*, 483 F. Supp. 653, 655 (D.D.C. 1980) (expedited discovery used where preliminary injunction was sought to enjoin defendants from soliciting proxies from stockholders); *Qwest Communications Int'l Inc. v. Worldquest Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo. 2003) (holding that a party may satisfy the "good cause" standard to expedite discovery where the party seeks a preliminary injunction); *McData Corp. v. Brocade Communications Sys.*, 233 F. Supp. 2d 1315, 1316 (D. Colo. 2002) (recognizing that the court had previously ordered expedited discovery to enable the court to rule on the plaintiff's motion for preliminary injunction).

Here, plaintiff seeks limited expedited discovery in order to present as complete a factual record as possible in support of its efforts to seek injunctive relief to protect CTI's public shareholders from being completely divested of their equity interests in the Company's stock without full disclosure of all material information. To prevent this irreparable injury, plaintiff will seek a temporary restraining order or preliminary injunction until defendants have disclosed to plaintiff and the Class all material information in connection with the Proposed Acquisition. The information disclosed to date concerning the Proposed Acquisition has been materially deficient. Because the Siemens tender offer is to expire at midnight on April 28, 2005, the challenged transaction will be completed before plaintiff can obtain discovery through the normal course of litigation, good cause exists for expedited discovery.[3] Under these exigent circumstances, the only possible way plaintiff and the other CTI public shareholders can ensure that all material information is disclosed to them is if the Court grants plaintiff the right to seek discovery on an expedited basis.

**B.    Defendants' Breaches of Fiduciary Duty Warrant Expedited Discovery**

---

[3]    Pursuant to Tennessee Rules of Civil Procedure, defendants' responses to plaintiff's document requests will not become due until May 16, 2005.

The need for expedited discovery is magnified here by defendants' breaches of the duty of candor and full disclosure. *See, e.g.*, *Malone v. Brincat*, 722 A.2d 5, 11 (Del. 1998) ("The duty of directors to observe proper disclosure requirements derives from the combination of the fiduciary duties of care, loyalty and good faith."). The full disclosure obligation attaches specifically to proxy statements and any other disclosures in contemplation of stockholder action. *Stroud v. Grace*, 606 A.2d 75, 85 (Del. 1992). In connection with mergers and/or tender offers, "[s]hareholders are entitled to be informed of information in the fiduciaries' possession that is material to the fairness of the price." *Eisenberg v. Chicago Milwaukee Corp.*, 537 A.2d 1051, 1059 (Del. Ch. 1987). This obligation is enforced "[w]hen the directors of the tender target company communicate with the shareholders, for example, through a Schedule 14D-9," and requires them to, "while complying with their ever-present duties of due care, good faith and loyalty, ***communicate honestly***." *In re Siliconix Inc., S'holders Litig.*, No. 18700, 2001 Del. Ch. LEXIS 83, at *36 (Del. Ch. June 19, 2001) (emphasis added). Indeed, courts have voiced a "strong preference" for enjoining a merger prior to it being consummated, rather than trying to "unscramble the eggs" after a merger is approved. *Med. Imaging Ctrs. of Am., Inc. v. Lichtenstein*, No. 96-0039-B(AJB), 1996 U.S. Dist. LEXIS 22362, at *12 (S.D. Cal. Feb. 29, 1996); *ODS Techs., L.P. v. Marshall*, 832 A.2d 1254, 1262 (Del. Ch. 2003) (court held that it is appropriate to address material disclosure problems through the issuance of a preliminary injunction that persists until the problems are corrected to avoid having to "unscramble the eggs" after the vote).

In this case, defendants' disclosures in the Tender Offer Documents concerning the Proposed Acquisition have been materially deficient because, among other reasons, they (i) have failed to include any information concerning the underlying analyses performed by the

Company's financial advisor, Bear Sterns, in connection with the rendering of its fairness opinion; and (ii) have failed to disclose material information regarding the financial windfall to defendants from the immediate vesting and exercisability of otherwise unvested and unexercisable stock options, restricted stock, stock units and warrants as a result of the Proposed Acquisition. This type of information is routinely disclosed in merger-related documents because, as Delaware courts have held, without such information, shareholders are unable to determine the adequacy of the price and process of the offer. *See In re Pure Res., Inc., S'holders Litig.*, 808 A.2d at 449; *Alidina*, 2002 Del. Ch. LEXIS 156, at *37.

In *Pure Resources*, for instance, the court noted that "courts must be candid in acknowledging that the ***disclosure of the banker's 'fairness opinion' alone and without more, provides stockholders with nothing other than a conclusion, qualified by a gauze of protective language designed to insulate the banker***." 808 A.2d at 449 (emphasis added). Likewise, in *Alidina*, the court quoted *Pure Resources* in stating that "'stockholders are entitled to ***a fair summary of the substantive work performed by the investment bankers upon whose advice the recommendations of their board as to how to vote on a merger or tender rely***.'" 2002 Del. Ch. LEXIS 156, at *37 (citation omitted).

Here, just as in *Pure Resources* and *Alidina*, CTI's public shareholders will be unable to determine what value, if any, to place upon the fairness opinion issued by Bear Sterns unless defendants disclose information about the underlying analyses performed by their advisors. Without this material information, and the full-information regarding the insiders' financial conflicts, CTI's public shareholders cannot make a fully-informed decision whether to tender their shares.

Similarly, Delaware law requires that defendants fully disclose the material information regarding the CTI insiders' financial conflicts of interest. *Zirn v. VLI Corp.*, 681 A.2d 1050, 1056 (Del. 1996) ("[i]n addition to the traditional duty to disclose all facts material to the proffered transaction, directors are under a fiduciary obligation to avoid misleading partial disclosures."). By disclosing that defendants will receive the immediate vesting and exercisability of otherwise unvested and unexercisable stock options, restricted stock, stock units and warrants as a result of the Proposed Acquisition, without disclosing the amounts of these benefits, defendants have made a materially misleading partial disclosure.

Accordingly, these disclosure deficiencies warrant the granting of plaintiff's request for expedited discovery pursuant to the schedule proposed below.

## IV. THE LIMITED EXPEDITED DISCOVERY PLAINTIFF SEEKS

Plaintiff requests that the Court grant (i) expedited document production, (ii) expedited depositions, and (iii) an expedited hearing on plaintiff's anticipated motion for preliminary injunction.[4] Plaintiff respectfully submits that an appropriate schedule would be as follows:

1. Within three (2) calendar days of an Order granting limited expedited discovery, but not later than April 11, 2005, defendants should produce the following documents from January 1, 2004 (except as otherwise noted) to the present:

(a) CTI's Board and committee meeting minutes with attachments and materials reviewed at the meetings, insofar as the materials relate to the Proposed Acquisition (or any other offer or merger), employment agreements, stock options, or the potential acquisition of or business combination with any other possible acquirer of CTI;

4 The discovery plaintiff seeks will be limited in purpose and conducted under time constraints. Accordingly, plaintiff requests that any discovery ordered by this Court be without prejudice as to its rights to conduct further discovery should it become necessary in the future.

(b)     All materials given to or received from any of CTI's or Siemens' financial advisors relating to the Proposed Acquisition or the potential acquisition of or business combination with any other possible acquirer of CTI;

(c)     Computer printouts summarizing to date the CTI executives' and directors' options holdings, options exercised, options vested and not vested, option grant dates, option vesting schedules, and option prices;

(d)     All documents concerning any business or personal relationships, affiliations, or ownership interests by or between any CTI directors (or entities with which any CTI directors are associated), Siemens, or any company in which Siemens has or had any ownership interest within the last 5 years;

(e)     Monthly and quarterly executive packages or any other documents containing CTI's historical and projected operations and financial performance;

(f)     All materials relied upon by defendants or in their possession concerning: (i) whether the Proposed Acquisition is fair to CTI's shareholders from a financial point of view; (ii) any potential acquisition of or business combination with any other entity; and (iii) CTI's current and future finances;

(g)     All communications between defendants, defendants' financial advisors, and/or any other entity expressing interest in acquiring CTI, and all communications to or from defendants concerning any potential acquisition of or business combination with any other entity; and

(h)     Any employment agreements, severance packages and/or change-in-control agreements (and any amendments thereto since CTI's last proxy statement) with CTI, Siemens or any related entity concerning defendants or CTI executives.

2. Defendants should make the following persons available for deposition between the dates of April 14, 2005 and April 18, 2005:

(a) Ronald Nutt, Ph.D.;

(b) Terry D. Douglass, Ph.D.;

(c) Michael E. Phelps, Ph.D; and

(d) The person most knowledgeable at Bear Stearns concerning the Proposed Acquisition.

3. In this case, the interests of justice also require an expedited hearing on plaintiff's anticipated motion for preliminary injunction because plaintiff and the class will be irreparably harmed absent judicial intervention. Accordingly, given that the tender offer closes at midnight on April 28, 2005, plaintiff requests that the Court schedule a hearing on plaintiff's anticipated motion for injunctive relief on April 27, 2005. Furthermore, in light of this hearing date and the expedited discovery schedule above, plaintiff proposes to file its opening brief in support of its anticipated motion for preliminary injunction on April 21, 2005, with an answering brief due April 25, 2005 and a reply brief due April 26, 2005.

## V. CONCLUSION

In sum, given the time constraints in this action, the material information that defendants have failed to disclose to CTI's public shareholders, and the irreparable injury to those shareholders that will result absent judicial intervention, plaintiff respectfully requests that the Court grant plaintiff's motion for limited expedited discovery and an expedited hearing and briefing schedule on plaintiff's anticipated motion for preliminary injunction, as set forth herein.

DATED: April 5, 2005

ARNETT, DRAPER, & HAGOOD

Daniel D. Rhea by JGS w/ permission

LEWIS R. HAGOOD
DANIEL D. RHEA
2300 First Tennessee Plaza
P. O. Box 300
Knoxville, TN 37901-0300
Telephone: (865) 546-7000
865/546-0423 (fax)

BRANSTETTER, KILGORE, STRANCH & JENNINGS
JAMES G. STRANCH, III, #2542
J. GERARD STRANCH, IV, 23045
227 Second Avenue, North – 4th Floor
Nashville, TN 37201-1631
Telephone: 615/254-8801
615/255-5419 (fax)

LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
DARREN J. ROBBINS
RANDALL J. BARON
RICK ATWOOD
401 B Street, Suite 1600
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

BARRETT, JOHNSTON & PARSLEY
GEORGE E. BARRETT, #2672
217 Second Avenue, North
Nashville, TN 37201-1601
Telephone: 615/244-2202
615/252-3798 (fax)

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of the foregoing has been sent, via hand delivery to Hunton & Williams, and via facsimile to Alston & Bird, LLP on this 5th day of April, 2005.

John Lucas
HUNTON & WILLIAMS, LLP
2000 Riverview Tower
900 South Gay Street
Knoxville, TN 37902

Scott P. Hilsen
Alston & Bird, LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424

IN THE CHANCERY COURT FOR KNOX COUNTY, TENNESSEE
SIXTH JUDICIAL DISTRICT AT KNOXVILLE

FILED 2005 APR -7 PM 4:03

| | | |
|---|---|---|
| CITY OF MONROE EMPLOYEES' RETIREMENT SYSTEM, On Behalf of Itself and All Others Similarly Situated, Plaintiff, | ) | Case No. 163762-3 |
| vs. | ) | CLASS ACTION |
| CTI MOLECULAR IMAGING, INC., et al., Defendants. | ) | PLAINTIFF'S AMENDED MOTION FOR EXPEDITED DISCOVERY |

{001599\05213\00022108.DOC / Ver.1}

Plaintiff hereby moves the court for an order expediting discovery as set forth in Plaintiff's Memorandum in Support of its Amended Motion for Expedited Discovery filed contemporaneously herewith. Absent court intervention, the shareholders of CTI Molecular Imaging, Inc. ("CTI" or the "Company"), a Delaware corporation headquartered in Knoxville, Tennessee, will be forced, by midnight on April 28, 2005 – to decide whether to accept a patently inadequate tender offer of $20.50 per share for their CTI shares ("Proposed Acquisition") by Siemens AG ("Siemens"). April 28, 2005 is long before an answer to the complaint or discovery responses are due, hence absent expedited discovery, Plaintiff will not be able to present the Court with a complete factual record for the Preliminary Injunction motion that Plaintiff plans to file before the close of the tender offer.

Given that CTI's shareholders will be irreparably injured if required to decide whether to tender their shares without the benefit of all required material information, fundamental notions of fairness without question weigh decisively in favor of Defendants being required to make discovery available a few days or weeks earlier than they otherwise will have to. Accordingly, Plaintiff's motion for limited expedited discovery should be granted.

DATED: April 7, 2005

ARNETT, DRAPER, & HAGOOD
LEWIS R. HAGOOD
DAN D. RHEA

[signature]
DAN D. RHEA

2300 First Tennessee Plaza
P.O. Box 300s
Knoxville, TN 37901-0300
Telephone: 865/546-7000
865/546-0423 (fax)

Case 3:05-cv-00204 Document 1-2 Filed 04/15/05 Page 39 of 41 PageID #: <pageID>

04/12/2005 12:37 FAX 865 215 2920 KNOX CO CHANCERY COURT

BRANSTETTER, KILGORE, STRANCH & JENNINGS
JAMES G. STRANCH, III, #2542
J. GERARD STRANCH, IV, #23045
227 Second Avenue, North – 4th Floor
Nashville, TN 37201-1631
Telephone: 615/254-8801
615/255-5419 (fax)

LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
DARREN J. ROBBINS
RANDALL J. BARON
A. RICK ATWOOD, JR.
SHAUN L. GROVE
401 B Street, Suite 1600
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

BARRETT, JOHNSTON & PARSLEY
GEORGE E. BARRETT, #2672
217 Second Avenue, North
Nashville, TN 37201-1601
Telephone: 615/244-2202
615/252-3798 (fax)

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of the foregoing has been sent, via facsimile and U. S. Mail, postage prepaid, to the following parties in interest this 7th day of April, 2005.

John Lucas
HUNTON & WILLIAMS, LLP
2000 Riverview Tower
900 South Gay Street
Knoxville, TN 37902

Scott P. Hilsen
ALSTON & BIRD, LLP
One Atlantic Center

04/12/2005 12:37 FAX 865 215 2920 KNOX CO CHANCERY COURT 008/009

1201 West Peachtree Street
Atlanta, GA 30309-3424

Dan D. Rhea

Case 3:05-cv-00204 Document 1-2 Filed 04/15/05 Page 41 of 41 PageID #: <pageID>

04/12/2005 12:37 FAX 865 215 2920 KNOX CO CHANCERY COURT 008/009