Rec'd 4-1-05

IN THE CHANCERY COURT FOR KNOX COUNTY, TENNESSEE
SIXTH JUDICIAL DISTRICT AT KNOXVILLE

| | | |
|---|---|---|
| CITY OF MONROE EMPLOYEES' RETIREMENT SYSTEM, On Behalf of Itself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>CTI MOLECULAR IMAGING, INC., et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 163762-3<br><br><u>CLASS ACTION</u><br><br>PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS AMENDED MOTION FOR EXPEDITED DISCOVERY |

## TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................ 1

II. RELEVANT FACTUAL SUMMARY ........................................ 3

III. LIMITED EXPEDITED DISCOVERY IS NECESSARY AND APPROPRIATE UNDER THESE CIRCUMSTANCES ........................................ 4

A. This Court Is Authorized to Grant the Expedited Discovery Plaintiff Seeks ........................................ 4

B. Defendants' Breaches of Fiduciary Duty Warrant Expedited Discovery ........................................ 9

IV. THE LIMITED EXPEDITED DISCOVERY PLAINTIFF SEEKS ........................................ 12

V. CONCLUSION ........................................ 14

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Alidina v. Internet.com Corp.*, No. 17235, 2002 Del. Ch. LEXIS 156 (Del. Ch. Nov. 6, 2002) ..... 2, 10, 11

*Amberjack, Ltd. v. Thompson*, No. 02A01-9512-CV-00281, 1997 Tenn. App. LEXIS 679 (Tenn. Ct. App. Oct. 7, 1997) ..... 1

*Bayberry Assocs. v. Jones*, No. 87-261-II, 1988 Tenn. App. LEXIS 718 (Tenn. Ct. App. Nov. 9, 1988), *vacated, remanded*, 783 S.W.2d 553 (Tenn. 1990) ..... 1

*Eisenberg v. Chicago Milwaukee Corp.*, 537 A.2d 1051 (Del. Ch. 1987) ..... 9

*Evmar Oil Corp. v. Getty Oil Co.*, No. 76-4039-MMC, 1978 U.S. Dist. LEXIS 18957 (C.D. Cal. Mar. 17, 1978) ..... 7

*Grimes v. Vitalink Communications Corp.*, 17 F.3d 1553 (3d Cir. 1994) ..... 7

*Harmony Mill L.P. v. Magness*, No. 7463, 1984 Del. Ch. LEXIS 419 (Del. Ch. Feb. 14, 1984) ..... 7

*Horizon Corp. v. Anselmi*, 483 F. Supp. 653 (D.D.C. 1980) ..... 8

*Hicks v. Lewis*, 148 S.W.3d 80, 86 (Tenn. Ct. App. 2003) ..... 1

*In re Pure Res., Inc., S'holders Litig.*, 808 A.2d 421 (Del. Ch. 2002) ..... 1, 10

*In re Siliconix Inc., S'holders Litig.*, No. 18700, 2001 Del. Ch. LEXIS 83 (Del. Ch. June 19, 2001) ..... 9

**Page**

*Malone v. Brincat*,
722 A.2d 5 (Del. 1998) ....................9

*McData Corp. v. Brocade Communications Sys.*,
233 F. Supp. 2d 1315 (D. Colo. 2002)....................8

*Med. Imaging Ctrs. of Am., Inc. v. Lichtenstein*,
No. 96-0039-B(AJB), 1996 U.S. Dist. LEXIS 22362
(S.D. Cal. Feb. 29, 1996) ....................9

*Mesa Petroleum Co. v. Aztec Oil & Gas Co.*,
406 F. Supp. 910 (N.D. Tex. 1976) ....................7

*ODS Techs., L.P. v. Marshall*,
832 A.2d 1254 (Del. Ch. 2003)....................10

*Qwest Communications Int'l Inc. v. Worldquest Networks, Inc.*,
213 F.R.D. 418 (D. Colo. 2003) ....................8

*Ronson Corp. v. Liquifin Aktiengesellschaft*,
483 F.2d 846 (3d Cir. 1973)....................7

*Stroud v. Grace*,
606 A.2d 75 (Del. 1992) ....................9

*Sunburst Bank v. Patterson*,
971 S.W.2d 1 (Tenn. Ct. App. 1997) ....................5

*Terminix Int'l Co., L.P. v. Tapley*,
No. 02A01-9701-CH-00028, 1997 Tenn. App. LEXIS 546
(Tenn. Ct. App. Aug. 4, 1997) ....................6

*Vythoulkas v. Vanderbilt University Hosp.*,
693 S.W.2d 350 (Tenn. Ct. App. 1985) ....................4

*Willingham v. Shelby County Election Comm'n*,
No. W2004-00230-COA-R3, 2004 Tenn. App. LEXIS 825
(Tenn. Ct. App. Dec. 7, 2004)....................4, 6

*Zirn v. VLI Corp.*,
681 A.2d 1050 (Del. 1996) ....................11

Case 3:05-cv-00204 Document 1-3 Filed 04/15/05 Page 4 of 34 PageID #: <pageID>

Page

STATUTES, RULES AND REGULATIONS

Tennessee Rules of Civil Procedure
Rule 30
Rule 33
Rule 34.02 .....2, 5

## I. INTRODUCTION

Absent court intervention, the shareholders of CTI Molecular Imaging, Inc. ("CTI" or the "Company"), a Delaware corporation headquartered in Knoxville, Tennessee, will be forced, by midnight on April 28, 2005, to decide – without the benefit of information that Delaware law[1] specifically requires to be disclosed – whether to accept a patently inadequate tender offer of $20.50 per share for their CTI shares (the "Proposed Acquisition") by Siemens AG ("Siemens").

As alleged in the Complaint, rather than complying with their duty to maximize shareholder value, CTI's directors agreed to the Proposed Acquisition to benefit themselves and long-time business partner Siemens. Further to that end, on April 1, 2005, defendants issued a materially defective and misleading Schedule 14D-9 recommendation statement to CTI's shareholders that fails to disclose critical information, including any information whatsoever concerning the financial analyses performed by CTI's financial advisor, Bear, Stearns & Co., Inc. ("Bear Stearns"), in connection with the fairness opinion it presented to the CTI board of directors ("CTI Board"). This information must be disclosed under Delaware law. *See In re Pure Res., Inc., S'holders Litig.*, 808 A.2d 421, 449 (Del. Ch.

---

1 *See Bayberry Assocs. v. Jones*, No. 87-261-II, 1988 Tenn. App. LEXIS 718 (Tenn. Ct. App. Nov. 9, 1988), *vacated, remanded*, 783 S.W.2d 553 (Tenn. 1990) (applying the law of the state of incorporation to shareholder's fiduciary duty claims since "the relationships among the . . . directors and stockholders . . . involve matters peculiar to corporations . . . ."); *accord Hicks v. Lewis*, 148 S.W.3d 80, 86 (Tenn. Ct. App. 2003); *Amberjack, Ltd. v. Thompson*, No. 02A01-9512-CV-00281, 1997 Tenn. App. LEXIS 679, at *22-*24 (Tenn. Ct. App. Oct. 7, 1997). Unless otherwise indicated, all emphasis is added and all citations are omitted.

2002); *Alidina v. Internet.com Corp.*, No. 17235, 2002 Del. Ch. LEXIS 156, at *37 (Del. Ch. Nov. 6, 2002).

Because the process and price of the Proposed Acquisition are unfair, plaintiff City of Monroe Employees' Retirement System intends to seek an order – prior to the expiration of the tender offer at midnight on April 28, 2005 – enjoining the Proposed Acquisition. In order to present as complete a record as possible to the Court on that injunction motion, plaintiff needs to complete certain limited expedited discovery, as detailed more fully below. Tennessee's Rules of Civil Procedure ("Tenn. R. Civ. P.") specifically permit its courts to shorten the normal time for responding to discovery when fundamental notions of fairness so require. *See, e.g.*, Tenn. R. Civ. P. 30, 33 and 34.02. Given that CTI's shareholders will be irreparably injured if required to decide whether to tender their shares without the benefit of all required material information, fundamental notions of fairness without question weigh decisively in favor of defendants being required to make discovery available a few days or weeks earlier than they otherwise will have to. Accordingly, plaintiff's motion for limited expedited discovery should be granted.[2]

---

2 Plaintiff's initial motion requested a different discovery schedule than the one requested by this amended motion, and also sought a hearing date and briefing schedule on plaintiff's anticipated motion for a preliminary injunction. However, given that the Court is unavailable to hear the instant motion until April 18, 2005, and that a hearing date on plaintiff's preliminary injunction motion has already been arranged, this amended motion solely addresses the expedited discovery plaintiff seeks, which has been modified based on the April 18, 2005, hearing date.

## II. RELEVANT FACTUAL SUMMARY

CTI, a Delaware corporation with its principal executive offices located in Knoxville, Tennessee, is a manufacturer of positron emission tomography ("PET") imaging equipment and related molecular imaging products used in the detection and treatment of cancer, cardiac disease and neurological disorders. *See* ¶8.[3] The Company's product line for PET includes scanners, cyclotrons, micro PET animal scanners, radio pharmaceuticals, detector materials, medical image analysis applications and support services. *Id.*

On March 18, 2005, the Company issued a press release entitled "Siemens to Acquire CTI Molecular Imaging." On the same day, defendants filed a form 8-K with the Securities and Exchange Commission ("SEC") announcing the Proposed Acquisition and including a copy of the agreement and plan of merger, certain stockholder support agreements and amendments to a change in control agreement. On March 22, 2005, plaintiff filed this action, seeking equitable relief against the members of the CTI Board and alleging breaches of fiduciary duty in connection with the sale of the Company. Since the filing of plaintiff's Complaint, events have taken place that have made the instant motion necessary.

Specifically, on April 1, 2005, defendants and Siemens filed with the SEC and disseminated to CTI's public shareholders Schedules 14D-9 and 14D-1 (the "Tender Offer Documents") purporting to explain certain aspects of the Proposed Acquisition, including, among other things, defendants' reasons for approving the Proposed Acquisition and recommending that shareholders tender their shares to Siemens. However, the Tender Offer

---

3 All "¶__ and "¶¶__" references are to plaintiff's Complaint Based upon Self-Dealing and Breach of Fiduciary Duty ("Complaint"), filed on March 22, 2005.

Documents are materially deficient in that they fail to disclose, among other things, any information at all concerning the analyses performed by CTI's financial advisor, Bear Stearns, in connection with the fairness opinion it presented to the CTI Board. The Tender Offer Documents also fail to disclose material information concerning defendants' conflicts of interest in agreeing to the Proposed Acquisition, including their roles with the Company going forward and the substantial benefits to be received by them as a result of the immediate vesting and exercisability of their otherwise unvested and/or unexercisable stock options, restricted stock, stock units and warrants.

Counsel for plaintiff engaged in discussions with defense counsel on April 1, 2005, and again on April 4, 2005, regarding whether defendants would agree to an expedited discovery schedule. Defendants refused to do so, thus necessitating this motion.

## III. LIMITED EXPEDITED DISCOVERY IS NECESSARY AND APPROPRIATE UNDER THESE CIRCUMSTANCES

### A. This Court Is Authorized to Grant the Expedited Discovery Plaintiff Seeks

"[T]he course of pretrial discovery is, in large measure, left to the discretion of the trial judge and . . . the exercise of this discretion is based upon the broad parameters of the rules and fundamental notion of fairness." *Vythoulkas v. Vanderbilt University Hosp.*, 693 S.W.2d 350, 356 (Tenn. Ct. App. 1985); *accord Willingham v. Shelby County Election Comm'n*, No. W2004-00230-COA-R3, 2004 Tenn. App. LEXIS 825, at *7-*8 (Tenn. Ct. App. Dec. 7, 2004) (recognizing the long standing rule that "decisions regarding pre-trial discovery matters rest within the sound discretion of the trial court"). Furthermore, Tennessee's discovery statutes have expressly provided for expedited discovery where the slower pace of normal pretrial discovery will prejudice the party seeking relief. For

example, Tenn. R. Civ. P. 30, 33 and 34.02, each provide the Court with discretion to shorten the normal time for discovery:

> RULE 30: DEPOSITIONS UPON ORAL EXAMINATION
>
> Rule 30.01: When Depositions May Be Taken.
>
> After commencement of the action, any party may take the testimony of any person, including a party, by deposition upon oral examination. ***Leave of court, granted with or without notice, must be obtained only if the plaintiff seeks to take a deposition prior to the expiration of 30 days after service of the summons and complaint*** . . . .
>
> RULE 33: INTERROGATORIES TO PARTIES
>
> Rule 33.01. Availability; Procedures for Use.
>
> . . . The party upon whom the interrogatories have been served shall serve a copy of the answers, and objections if any, within 30 days after the service of the interrogatories, except that a defendant may serve answers or objections within 45 days after service of the summons and complaint upon that defendant. ***The court may allow a shorter or longer time***. . . .
>
> RULE 34.02: PRODUCTION OF DOCUMENTS [PROCEDURE]
>
> * * *
>
> The party upon whom the request is served shall serve a written response within 30 days after the service of the request, except that a defendant may serve a response with 45 days after service of the summons and complaint upon the defendant. ***The court may allow a shorter or longer time***. . . .

Numerous Tennessee Appellate decisions also have recognized the right to and need for expedited discovery. In *Sunburst Bank v. Patterson*, 971 S.W.2d 1 (Tenn. Ct. App. 1997), residents of Mississippi purchased a home in Shelby County and took out a mortgage on the property with Sunburst. Because of a failure to file proper forms as to where the tax bills were to be paid, a suit was eventually brought and the property was sold. The Bank and the residents, who had first bought the house, brought suit and moved for and were granted the opportunity to conduct expedited discovery. *Id.* at 2.

In *Willingham*, 2004 Tenn. App. LEXIS 825, at *3-*4, the Court recognized that discovery can easily be served and answered under a compressed time frame. In *Willingham*, the discovery at issue was served and answered in less than ten business days. *Id.*

Similarly, in *Terminix Int'l Co., L.P. v. Tapley*, No. 02A01-9701-CH-00028, 1997 Tenn. App. LEXIS 546 (Tenn. Ct. App. Aug. 4, 1997), two employees of the plaintiff, Terminix, who had signed covenants not to compete, resigned their employment and subsequently started their own pet control business. *Id.* at *2. Terminix filed suit to enjoin its former employees. On the same day the case was filed, the court granted expedited discovery to all parties. *Id.* at *2. And, depositions were scheduled within five days of service of process. *Id.* at *3. Thus, it is well established that Tennessee courts can authorize expedited discovery when necessary, as here, to avoid undue prejudice.

Delaware Chancery Courts, which deal regularly with issues involving corporate acquisitions, routinely permit expedited discovery in actions like this one challenging a corporate acquisition.[4] As the court in *American Stores Co. v. Lucky Stores, Inc.*, C.A. No. 97665, Allen, C., slip op. at 3-4 (Del. Ch. Apr. 13, 1988) (attached hereto as Exhibit A) stated:

> The granting of [an expedited discovery motion] is quite conventional in litigation of this type for very good reason[s]. Cases involving contests for corporate control are of necessity very fast-moving. Unlike the classic model of litigation which those who formulated the rules no doubt had in mind, (*i.e.*,

4 Although Tennessee procedural rules apply to plaintiff's claims, because CTI was incorporated in Delaware, the substantive law of Delaware applies to plaintiff's claims. *See supra* n.1.

a constellation of fixed, historical facts up which a claim is based), takeover cases are fluid, constantly changing affairs, or almost so. In some instances, the underlying subject matter of the suit – control of the corporation – may itself be fully resolved before the time of taking depositions under Rule 30 may have arrived. Even in this context, plaintiff must show some reason justifying departure from the sequence envisioned by the rules, but in this context such a showing will be easier to make.

> The presence of a transaction of some sort, a shareholders meeting, the closing of a tender offer or the closing of some structural transaction (a recapitalization, sale of substantial assets, *etc.*), is typically the reason in such cases to permit expedited discovery. Here I am satisfied that there is legitimate need for expedited discovery and will therefore order that plaintiff may institute any discovery now contemplated by our rules.

*American Stores*, slip op. at 3-4; *In re International Jensen Inc. S'holders Litig.*, C.A. No. 14992, Jacobs, V.C., slip op. at 2 (Del. Ch. July 16, 1996) (attached hereto as Exhibit B) ("A party's request to schedule an application for a preliminary injunction, and to expedite the discovery related thereto, is normally routinely granted. Exceptions to that norm are rare."); *see also Harmony Mill L.P. v. Magness*, No. 7463, 1984 Del. Ch. LEXIS 419, at *3-*5 (Del. Ch. Feb. 14, 1984).

Likewise, numerous federal courts permit expedited discovery in similar circumstances. *See, e.g.*, *Ronson Corp. v. Liquifin Aktiengesellschaft*, 483 F.2d 846, 848 (3d Cir. 1973) (district court directed expedited discovery in a case involving allegations that defendants made misrepresentations and omissions in connection with a tender offer); *Mesa Petroleum Co. v. Aztec Oil & Gas Co.*, 406 F. Supp. 910, 917 (N.D. Tex. 1976) (in a case concerning a corporate acquisition offer, the court ordered that an expedited discovery program be adopted); *Grimes v. Vitalink Communications Corp.*, 17 F.3d 1553, 1555 (3d Cir. 1994) (expedited discovery used in suit concerning allegations that the defendants breached their fiduciary duties in approving a merger); *Evmar Oil Corp. v. Getty Oil Co.*,

No. 76-4039-MMC, 1978 U.S. Dist. LEXIS 18957 (C.D. Cal. Mar. 17, 1978) (in anticipation of the hearing upon plaintiffs' motion for a preliminary injunction restraining a merger, expedited discovery, including the taking of more than 20 depositions, was conducted by the parties); *Horizon Corp. v. Anselmi*, 483 F. Supp. 653, 655 (D.D.C. 1980) (expedited discovery used where preliminary injunction was sought to enjoin defendants from soliciting proxies from stockholders); *Qwest Communications Int'l Inc. v. Worldquest Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo. 2003) (holding that a party may satisfy the "good cause" standard to expedite discovery where the party seeks a preliminary injunction); *McData Corp. v. Brocade Communications Sys.*, 233 F. Supp. 2d 1315, 1316 (D. Colo. 2002) (recognizing that the court had previously ordered expedited discovery to enable the court to rule on the plaintiff's motion for preliminary injunction).

Here, plaintiff seeks limited expedited discovery in order to present as complete a factual record as possible in support of its efforts to seek injunctive relief to protect CTI's public shareholders from being completely divested of their equity interests in the Company's stock without full disclosure of all material information. To prevent this irreparable injury, plaintiff will seek a preliminary injunction until defendants have disclosed to plaintiff and the class all material information in connection with the Proposed Acquisition. The information disclosed to date concerning the Proposed Acquisition has been materially deficient. Because the Siemens tender offer is to expire at midnight on April 28, 2005, the challenged transaction will be completed before plaintiff can obtain discovery

Case 3:05-cv-00204 Document 1-3 Filed 04/15/05 Page 13 of 34 PageID #: <pageID>

through the normal course of litigation, good cause exists for expedited discovery.[5] Under these exigent circumstances, the only possible way plaintiff and the other CTI public shareholders can ensure that all material information is disclosed to them is if the Court grants plaintiff the right to seek discovery on an expedited basis.

### B. Defendants' Breaches of Fiduciary Duty Warrant Expedited Discovery

The need for expedited discovery is magnified here by defendants' breaches of the duty of candor and full disclosure. *See, e.g., Malone v. Brincat*, 722 A.2d 5, 11 (Del. 1998) ("The duty of directors to observe proper disclosure requirements derives from the combination of the fiduciary duties of care, loyalty and good faith."). The full disclosure obligation attaches specifically to proxy statements and any other disclosures in contemplation of stockholder action. *Stroud v. Grace*, 606 A.2d 75, 85 (Del. 1992). In connection with mergers and/or tender offers, "[s]hareholders are entitled to be informed of information in the fiduciaries' possession that is material to the fairness of the price." *Eisenberg v. Chicago Milwaukee Corp.*, 537 A.2d 1051, 1059 (Del. Ch. 1987). This obligation is enforced "[w]hen the directors of the tender target company communicate with the shareholders, for example, through a Schedule 14D-9," and requires them to, "while complying with their ever-present duties of due care, good faith and loyalty, ***communicate honestly***." *In re Siliconix Inc., S'holders Litig.*, No. 18700, 2001 Del. Ch. LEXIS 83, at *36 (Del. Ch. June 19, 2001). Indeed, courts have voiced a "strong preference" for enjoining a

---

5 Pursuant to Tennessee Rules of Civil Procedure, defendants' responses to plaintiff's document requests will not become due until May 16, 2005.

merger prior to it being consummated, rather than trying to "'unscramble the eggs'" after a merger is approved. *Med. Imaging Ctrs. of Am., Inc. v. Lichtenstein*, No. 96-0039-B(AJB), 1996 U.S. Dist. LEXIS 22362, at *12 (S.D. Cal. Feb. 29, 1996); *ODS Techs., L.P. v. Marshall*, 832 A.2d 1254, 1262 (Del. Ch. 2003) (court held that it is appropriate to address material disclosure problems through the issuance of a preliminary injunction that persists until the problems are corrected to avoid having to "'unscramble the eggs'" after the vote).

In this case, defendants' disclosures in the Tender Offer Documents concerning the Proposed Acquisition have been materially deficient because, among other reasons, they: (i) have failed to include any information concerning the underlying analyses performed by the Company's financial advisor, Bear Stearns, in connection with the rendering of its fairness opinion; and (ii) have failed to disclose material information regarding the financial windfall to defendants from the immediate vesting and exercisability of otherwise unvested and unexercisable stock options, restricted stock, stock units and warrants as a result of the Proposed Acquisition. This type of information is routinely disclosed in merger-related documents because, as Delaware courts have held, without such information, shareholders are unable to determine the adequacy of the price and process of the offer. *See Pure Res.*, 808 A.2d at 449; *Alidina*, 2002 Del. Ch. LEXIS 156, at *37.

In *Pure Resources*, for instance, the court noted that "courts must be candid in acknowledging that the ***disclosure of the banker's 'fairness opinion' alone and without more, provides stockholders with nothing other than a conclusion, qualified by a gauze of protective language designed to insulate the banker***." 808 A.2d at 449. Likewise, in *Alidina*, the court quoted *Pure Resources* in stating that "'stockholders are entitled to ***a fair***

Case 3:05-cv-00204 Document 1-3 Filed 04/15/05 Page 15 of 34 PageID #: <pageID>

*summary of the substantive work performed by the investment bankers upon whose advice the recommendations of their board as to how to vote on a merger or tender rely.*'" 2002 Del. Ch. LEXIS 156, at *37.

Here, just as in *Pure Resources* and *Alidina*, CTI's public shareholders will be unable to determine what value, if any, to place upon the fairness opinion issued by Bear Sterns unless defendants disclose information about the underlying analyses performed by their advisors. Without this material information, and the full-information regarding the insiders' financial conflicts, CTI's public shareholders cannot make a fully-informed decision whether to tender their shares.

Similarly, Delaware law requires that defendants fully disclose the material information regarding the CTI insiders' financial conflicts of interest. *Zirn v. VLI Corp.*, 681 A.2d 1050, 1056 (Del. 1996) ("[i]n addition to the traditional duty to disclose all facts material to the proffered transaction, directors are under a fiduciary obligation to avoid misleading partial disclosures"). By disclosing that defendants will receive the immediate vesting and exercisability of otherwise unvested and unexercisable stock options, restricted stock, stock units and warrants as a result of the Proposed Acquisition, without disclosing the amounts of these benefits, defendants have made a materially misleading partial disclosure.

Accordingly, these disclosure deficiencies warrant the granting of plaintiff's request for expedited discovery pursuant to the schedule proposed below.

## IV. THE LIMITED EXPEDITED DISCOVERY PLAINTIFF SEEKS

Plaintiff requests that the Court grant: (i) expedited document production; and (ii) expedited depositions.[6] Plaintiff respectfully submits that an appropriate schedule would be as follows:

1. By the time the instant motion is heard on April 18, 2005, defendants will have been on notice for nearly two weeks regarding the limited categories of documents sought by this motion and should therefore have had ample time to gather those documents together in the event that the Court grants this motion. Accordingly, by the close of business on April 18, 2005, defendants should produce the following documents from January 1, 2004 (except as otherwise noted) to the present:

(a) CTI's Board and committee meeting minutes with attachments and materials reviewed at the meetings, insofar as the materials relate to the Proposed Acquisition (or any other offer or merger), employment agreements, stock options, restricted stock, stock units, and warrants in CTI stock held by defendants and/or their affiliates;

(b) All materials given to or received from any of CTI's or Siemens' financial advisors relating to the Proposed Acquisition or the potential acquisition of or business combination with any other possible acquirer of CTI;

---

6 The expedited discovery plaintiff seeks by this motion will be limited in purpose and conducted under time constraints. Accordingly, plaintiff requests that any discovery ordered by this Court be without prejudice as to its rights to conduct further discovery should it become necessary in the future.

(c) Computer printouts summarizing to date the CTI executives' and directors' options holdings, options exercised, options vested and not vested, option grant dates, option vesting schedules, and option prices;

(d) All documents concerning any business or personal relationships, affiliations, or ownership interests by or between any CTI directors (or entities with which any CTI directors are associated), Siemens, or any company in which Siemens has or had any ownership interest within the last five years;

(e) Monthly and quarterly executive packages or any other documents containing CTI's historical and projected operations and financial performance;

(f) All materials relied upon by defendants or in their possession concerning: (i) whether the Proposed Acquisition is fair to CTI's shareholders from a financial point of view; (ii) any potential acquisition of or business combination with any other entity; and (iii) CTI's current and future finances;

(g) All communications between defendants, defendants' financial advisors, and/or any other entity expressing interest in acquiring CTI, and all communications to or from defendants concerning any potential acquisition of or business combination with any other entity; and

(h) Any employment agreements, severance packages and/or change-in-control agreements (and any amendments thereto since CTI's last proxy statement) with CTI, Siemens or any related entity concerning defendants or CTI executives.

2. Defendants should make the following persons available for deposition (limited to four hours each) between the dates of April 20, 2005 and April 22, 2005:

(a) Ronald Nutt, Ph.D.;

(b) Terry D. Douglass, Ph.D.; and

(c) The person most knowledgeable at Bear Stearns concerning the Proposed Acquisition.

## V. CONCLUSION

In sum, given the time constraints in this action, the material information that defendants have failed to disclose to CTI's public shareholders, and the irreparable injury to those shareholders that will result absent judicial intervention, plaintiff respectfully requests that the Court grant plaintiff's motion for limited expedited discovery as set forth herein.

DATED: April 7, 2005

Respectfully submitted,

ARNETT, DRAPER, & HAGOOD
LEWIS R. HAGOOD
DAN D. RHEA

[signature]
DAN D. RHEA

2300 First Tennessee Plaza
P.O. Box 300
Knoxville, TN 37901-0300
Telephone: 865/546-7000
865/546-0423 (fax)

BRANSTETTER, KILGORE, STRANCH & JENNINGS
JAMES G. STRANCH, III, #2542
J. GERARD STRANCH, IV 23047
227 Second Avenue, North – 4th Floor
Nashville, TN 37201-1631
Telephone: 615/254-8801
615/255-5419 (fax)

LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
DARREN J. ROBBINS
RANDALL J. BARON
A. RICK ATWOOD, JR.
SHAUN L. GROVE
401 B Street, Suite 1600
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

BARRETT, JOHNSTON & PARSLEY
GEORGE E. BARRETT, #2672
217 Second Avenue, North
Nashville, TN 37201-1601
Telephone: 615/244-2202
615/252-3798 (fax)

Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and exact copy of the foregoing has been sent, via facsimile and U. S. Mail, postage prepaid, to the following parties in interest this 7th day of April, 2005.

John Lucas
HUNTON & WILLIAMS, LLP
2000 Riverview Tower
900 South Gay Street
Knoxville, TN 37902

Scott P. Hilsen
ALSTON & BIRD, LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424

Dan D. Rhea

EFiled: Jun 28 2004 8:19PM EDT
Filing ID 3806781

COURT OF CHANCERY
OF THE
STATE OF DELAWARE

JACK B. JACOBS
VICE-CHANCELLOR

COURT HOUSE
WILMINGTON, DELAWARE 19801

July 16, 1996

Michael J. Hanrahan, Esquire
Bruce E. Jameson, Esquire
Prickett, Jones, Elliott, Kristol & Schnee
1310 King Street
P.O. Box 1328
Wilmington, DE 19899

Norman M. Monhait, Esquire
Rosenthal, Monhait, Gross & Goddess
First Federal Plaza
P.O. Box 1070
Wilmington, DE 19899

Martin P. Tully, Esquire
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
Wilmington, DE 19899

Bruce M. Stargatt, Esquire
Young, Conaway, Stargatt & Taylor
Rodney Square North
P.O. Box 391
Wilmington, DE 19899

Daniel A. Dreisbach, Esquire
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

Lewis H. Lazarus, Esquire
Morris, James, Hitchens & Williams
222 Delaware Avenue
Wilmington, DE 19801

Re: **In Re International Jensen Incorporated Shareholders Litigation**
**Consolidated Civil Action No. 14992**
**Date Submitted: July 13, 1996**

Gentlemen:

The plaintiffs have moved for an order expediting the discovery, and scheduling a hearing on their application for a preliminary injunction, on the claims alleged in their Consolidated Class Action Complaint. That motion was heard yesterday

in an extended office conference. Having considered the arguments presented by counsel at the conference and in their earlier written submissions, the Court concludes that the motion should be denied.

A party's request to schedule an application for a preliminary injunction, and to expedite the discovery related thereto, is normally routinely granted. Exceptions to that norm are rare. A paradigm exception, however, arises where it is clear that the transaction or event sought to be enjoined will not result in irreparable harm because any wrongful conduct can be adequately remedied by a money damages award. The defendants argue that this is such a case, and I agree.

At issue here is the decision by the directors and majority stockholders of International Jensen, Incorporated ("Jensen") to approve and vote for certain transactions in which Recoton Corporation ("Recoton") would acquire Jensen in a merger, and defendant Robert G. Shaw, Jensen's Chairman and CEO ("Shaw"), would acquire a certain segment of Jensen's business known as the "OEM business". In that transaction, Jensen's public (minority) shareholders would receive $11 per share for their stock, and Jensen's majority shareholders (Mr. Shaw and an affiliate of William Blair & Company, L.L.C.) would receive $8.90 for their shares.

The gist of the plaintiffs' complaint is that a competing bidder, Emerson Radio Corp. ("Emerson") was willing to pay a higher price for Jensen (including the OEM business) -- specifically $12 per share to the public stockholders -- and that by not approving the Emerson bid, the defendants violated their fiduciary duties of loyalty and

care to Jensen's public stockholders. As a consequence, defendants claim, Jensen's public stockholders stand to lose the benefit of the $1 per share higher Emerson offer, representing a total benefit to public shareholders of over $2.1 million. Accordingly, the plaintiffs ask this Court to prohibit the consummation of the Recoton transaction, and to direct the defendants (including those who control a majority of Jensen's stock and oppose Emerson's offer) to approve the Emerson proposal.

The defendants argue that no basis exists in law or equity to order a corporation's majority stockholders to vote for a transaction that they oppose. I note that argument but do not address it, because it is clear that what the plaintiffs here are really seeking is the $1 per share difference between the Emerson and Recoton proposals. Because plaintiffs make no claim or showing that the defendants would be unable to respond to a $2.1 million money judgment, there is no reason -- equitable or economic -- to subject the defendants to the expense and disruption of an expedited preliminary injunction proceeding. If, as the plaintiffs claim, the Recoton transaction is the product of a breach of fiduciary duty, that can be established in, and fully rectified after, a post-transaction final hearing.

The plaintiffs advance several reasons why that not so and why, in their view, this case poses a threat of irreparable harm that only an injunction can remedy. First, they argue that the Recoton merger, if allowed to proceed, cannot be undone at a later time because rights of third parties and other structural changes will have intervened. That may be true, but it is also true of the Emerson proposal which the plaintiffs fully

endorse. More importantly, the structural alteration aspect of the Recoton transaction is not a feature of which the plaintiffs complain. Their objection goes to the price.

Second, the plaintiffs contend that if they are precluded from seeking injunctive relief, they could be left with no remedy at all. That is because (plaintiffs argue) (i) they have alleged breaches of both the duties of loyalty and care and (ii) should the Court reject their duty of loyalty claims, no recovery would be available on the duty of care claims,. because Jensen's charter contains an exculpatory clause modeled after 8 Del. C. §102(b)(7). This argument elides over the essence of plaintiffs' complaint, which is that the defendants have disloyally favored one bid (Recoton's) over a superior bid (Emerson's). As previously noted, as to that claim no injunctive relief is needed because damages would make the public shareholders whole. The plaintiffs do not explain why, as a legal matter, the addition of an alternative due care claim attacking that same conduct alters the analysis. If their suggestion is that an injunction application must always be entertained to protect a due care claim in cases involving corporations having §102(b))7) exculpatory charter clauses, a far more adequate; legally supported presentation would be needed to be persuasive than has been made here.

Finally, the plaintiffs argue that even if the mandatory relief they seek (compelling approval of the Emerson deal) is problematic, the prohibitory relief they request (halting consummation of the Recoton deal) is not, and that this latter request for injunctive relief alone merits the scheduling of their application. The reason, plaintiffs say, is that they allege that the auction process that resulted in the present Emerson and

Recoton bids was highly flawed. That being the case (they suggest), only an injunction will afford an adequate remedy, since a new bidding contest is required and that because no one can predict the outcome of a new auction (which might result in a bid differential higher--or lower--than $1 per share), the precise extent of money damages could not be ascertained.

This argument, while adequate on a purely theoretical level, was not made in the plaintiffs' papers and ignores the reality of this case and the contents of the plaintiffs' own pleading. The complaint does allege that the auction process was flawed, but it does not seek an order requiring the parties to start anew. The thrust of the "tainted-auction" claim is that the Recoton transaction must be enjoined so that the Emerson proposal can proceed. Nor is this a case where the unsuccessful bidder (here, Emerson) is in court seeking injunctive relief to compel a new auction and claiming that it is prepared to bid more than the successful bidder. Compare Mills Acquisition Co. v. MacMillan, Inc., Del. Supr., 559 A.2d 1261 (1988). Indeed, nothing in the complaint suggests that a new auction would result in any new bidders or offers higher than those being made by Emerson and Recoton -- which themselves are the end result of a highly contested auction process. This effort by plaintiffs to recharacterize their claims must be rejected.

SEP. 5. 2002 10:21AM NO. 9911 P. 2

All Counsel
July 16, 1996
Page 6

* * *

For the above reasons, the motion to expedite is denied. IT IS SO ORDERED.

Very truly yours,

Jack B. Jacobs

cc: Register in Chancery

EFiled: Jun 28 2004 8:19PM EDT
Filing ID 3806781

COURT OF CHANCERY
OF THE
STATE OF DELAWARE

WILLIAM T. ALLEN
CHANCELLOR

COURT HOUSE
WILMINGTON, DELAWARE

April 13, 1988

Stephen P. Lamb, Esquire
Skadden, Arps, Slate,
Meagher & Flom
P. O. Box 636
Wilmington, Delaware 19899

Lawrence A. Hamermesh, Esquire
Morris, Nichols, Arsht & Tunnell
P. O. Box 1347
Wilmington, Delaware 19899

Re: American Stores Company v. Lucky Stores, Inc., et al., Civil Action No. 9766

Dear Counsel:

Plaintiff has moved to amend and supplement its complaint to assert, inter alia, claims arising from the April 7, 1988 adoption of a so-called "poison pill rights plan" by defendant Lucky Stores, Inc. ("Lucky"). This plan is alleged to constitute an unreasonable response to plaintiff's currently outstanding tender offer for up to all of the shares of Lucky, which offer is said in the proposed pleading to be non-coercive. More generally, the complaint alleges that the defendants have engaged in a series of acts designed to entrench the existing board in office for selfish reasons.

The relief sought includes orders (1) directing defendants to negotiate with plaintiff in good faith concerning its

proposed acquisition of control of Lucky, (2) enjoining the operation of the rights plan, (3) requiring the individual defendants to take such board action as is necessary to exempt the current tender offer from the operation of 8 Del. C. § 203, and (4) enjoining "any other defensive action to prevent consummation of plaintiff's tender offer."

Plaintiff has also moved for an order permitting the taking of expedited discovery.

Both of these motions are resisted, the first on the basis that the amended complaint fails to state a claim, and the second on the basis that to permit discovery now will inappropriately interfere with the board's carrying out of its responsibility to manage the business and affairs of the corporation. This is said to be the case because discovery now will divert the board and its special advisors from the demanding task of creating and evaluating alternative forms of transactions that might be more beneficial to shareholders than the plaintiff's proposal, and because discovery now will inevitably involve attempts to learn information regarded by the board as confidential, including information relating to alternative transactions that are now, apparently, being actively pursued.

I will grant the motion to file the Second Amended and Supplemental Complaint. Our rule directs that leave to file

such a pleading should "be freely given when justice so requires." Rule 15(a). Here there is no substantial claim that defendants would be prejudiced by allowing the amendment. The case has only begun and there could be no such prejudice. The argument that is made — that the amended pleading fails to state a claim — might in some circumstances provide a basis to deny a motion to amend. There are cases, although none in this jurisdiction that have been cited to me, disallowing an amendment on such ground. In the usual case, however, the better practice is to permit the amendment, where there is no substantial prejudice to defendants in doing so, and to pass upon the legal sufficiency of the amended pleading on a motion under Rule 12.

Thus, the granting of this motion will not constitute a ruling for purposes of this case on the issue of the legal sufficiency of the amended pleading, which issue defendants have attempted to raise now.

As to the motion for expedited discovery, the granting of such motion is quite conventional in litigation of this type for very good reason. Cases involving contests for corporate control are of necessity very fast-moving. Unlike the classic model of litigation which those who formulated the rules no doubt had in mind, (i.e., a constellation of fixed, historical facts upon which a claim is based), takeover cases are fluid.

constantly changing affairs, or almost so. In some instances, the underlying subject matter of the suit — control of the corporation — may itself be fully resolved before the time of taking depositions under Rule 30 may have arrived. Even in this context, plaintiff must show some reason justifying departure from the sequence envisioned by the rules, but in this context such a showing will be easier to make.

The presence of a transaction of some sort, a shareholders meeting, the closing of a tender offer or the closing of some structural transaction (a recapitalization, sale of substantial assets, etc.), is typically the reason in such cases to permit expedited discovery. Here I am satisfied that there is legitimate need for expedited discovery and will therefore order that plaintiff may institute any discovery now contemplated by our rules.

Discovery in this setting does seem inevitably to involve what has come to be called the white knight privilege. The principles that apply to invocation of such a "privilege" have been fairly stated by the court in a number of rulings known to counsel. The difficulty in each instance is not in articulating the considerations but in drawing a line. In that respect, I can add that the document discovery requests currently on file certainly cover areas in which I would quickly sustain assertion of that "privilege."

More than this I need not now say, except that I will expect both sides to attempt in good faith to apply the principles set forth in earlier rulings in this court and elsewhere in order to work out these questions of the specific scope of discovery. There should be more communication between counsel than there seems to have been here on the subject of discovery, before an application of this kind is presented. I was surprised, for example, that when counsel brought this matter to the court, neither side could authoritatively report on the status of negotiations concerning a confidentiality-standstill agreement.

I will direct counsel to confer on or before April 14 and to meet for so long as is productive in an attempt to agree upon a schedule for the production of documents and the taking of depositions, including third party depositions. Other relevant topics such as the scope of production that will voluntarily be made should also be addressed. Defendants should commence the work necessary to respond promptly to those production requests that appear to be non-controversial, so that such production may be made to plaintiff no later than 5:00 p.m. on April 15th.

Following such conference, I will be available to rule upon any pertinent discovery problems that the parties have

Messrs. Lamb and Hamermesh
Page 6
April 13, 1988

not been able to resolve. I am hopeful that no such request will be necessary.

It is hereby ordered that plaintiff may institute any discovery authorized by the Rules of the Court of Chancery forthwith.

Chancellor

April 13, 1988

cc: Register in Chancery

IN THE CHANCERY COURT FOR KNOX COUNTY, TENNESSEE

| | | |
|---|---|---|
| CITY OF MONROE EMPLOYEES' RETIREMENT SYSTEM, On Behalf of Itself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CTI MOLECULAR IMAGING, INC., RONALD NUTT, TERRY D. DOUGLASS, WOLF-EKKEHARD BLANZ, ROY DOUMANI, JAMES R. HEATH, LEROY HOOD, HAMILTON JORDAN, WILLIAM MCINNES and MICHAEL E. PHELPS<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No: 163762-3 |

## NOTICE OF APPEARANCE

Please take notice that John A. Lucas and the firm of Hunton & Williams LLP enters an appearance as counsel for Defendants CTI Molecular Imaging, Inc., Ronald Nutt, Terry D. Douglass, Roy Doumani, James R. Heath, Leroy Hood and Hamilton Jordan in this action.

Please serve all pleadings, motions, orders, correspondence and other documents in this action upon counsel at the following address:

John A. Lucas, Esq.
Hunton & Williams LLP
P.O. Box 951
900 South Gay Street, Suite 2000
Knoxville, Tennessee 37901
(865) 549-7700 (telephone)
(865) 549-7704 (facsimile)

By:________________________
John A. Lucas (011198)
**HUNTON & WILLIAMS, LLP**
2000 Riverview Tower
900 South Gay Street
Knoxville, Tennessee 37902
(865) 549-7700 (telephone)
(865) 549-7704 (facsimile)

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of *Notice of Appearance* has been served upon the following via United States mail, postage prepaid, on this 8th day of April, 2005:

Lewis R. Hagood, Esq.
Daniel D. Rhea, Esq.
Arnett, Draper and Hagood
2300 First Tennessee Plaza
P.O. Box 300
Knoxville, TN 37901-0300
(865) 546-7000
(865) 546-0423 (fax)

Darren J. Robbins, Esq.
Randall J. Baron, Esq.
Lerach Coughlin Stoia Geller
Rudman & Robbins, LLP
401 B Street, Suite 1600
San Diego, CA 92101
(619) 231-1058
(619) 231-7423 (fax)

James G. Stranch, III, Esq.
Joe P. Leniski, Jr., Esq.
J. Gerard Stranch, IV, Esq.
Branstetter, Kilgore, Stranch & Jennings
227 Second Avenue, North -4th Floor
Nashville, TN 37201-1631
(615) 254-8801

George E. Barrett, Esq.
Barrett, Johnston & Parsley
217 Second Avenue, North
Nashville, TN 37201-1601
(615) 244-2202

________________________